IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANNETTE C. WATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:13CV1007 |
| | ) | |
| DUKE MEDICAL CENTER and | ) | |
| DAVIS AMBULATORY SURGICAL | ) | |
| CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

Defendants Duke Medical Center and Davis Ambulatory Surgical Center[1] (collectively "Defendants") instituted this action in federal court by filing a Petition for Removal [Doc. #1], requesting to remove this action from the Superior Court of Durham County, on November 13, 2013. Plaintiff Annette C. Watkins ("Plaintiff"), *pro se*, subsequently filed her Complaint [Doc. #6] in this Court on November 15, 2013. The matter currently before the Court is Defendants'

---

[1] As noted in Defendants' instant Motion, Duke University Health System, Inc. is the entity responding on behalf of the named Defendants. This is because, as Defendants allege, Duke Medical Center "is not an entity in and of itself, but rather a name used to refer to medical aspects of Duke University and Duke University Health System, Inc." (Mot. to Confirm Arbitration Award [Doc. #9], at 1, n.1.) Additionally, Davis Ambulatory Surgical does business as Associated Health Services, Inc., which, as Defendants assert, is a "wholly-owned support corporation of Duke University Health System, Inc." (Id.) Furthermore, the Declaration submitted by Denise L. Evans, Duke University Executive Director of Staff and Labor Relations, states that Plaintiff was an employee of Duke University and Duke University Health System, Inc. (Evans Decl. ¶ 1.) Plaintiff has failed to address any contention that Duke University Health System, Inc. is the proper entity to respond on behalf of Defendants or that Defendants are only subparts of Duke University and Duke University Health System, Inc. Thus, the Court will accept Defendants' assertion that Defendants are subentities of Duke University and Duke University Health System, Inc.

Motion to Confirm Arbitration Award and Dismiss Plaintiff's Complaint [Doc. #9]. Defendants argue that the Court should confirm the Award entered by Arbitrator Howard Cohen on July 18, 2012 (see Arbitration Award [Doc. #10-1]) and dismiss Plaintiff's Complaint because the claims raised in this action were the subject of a "final and binding arbitration [award]." (Mot. to Confirm Arbitration Award [Doc. #9], at 1.) Furthermore, Defendants argue that to the extent Plaintiff asserts a claim under § 1983, which was not the subject of the arbitration award, that claim should be dismissed because Plaintiff does not allege any state action. On August 11, 2014, the Court held a hearing on Defendants' Motion to Confirm Arbitration Award and Dismiss Plaintiff's Complaint [Doc. #9]. For the reasons discussed herein, and stated in open Court on August 11, 2014, the Court will grant Defendants' Motion to Confirm Arbitration Award and the Court will dismiss Plaintiff's Complaint.

I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff asserts in her Complaint that Sherry Strader ("Strader"), a nurse manager at Defendant Davis Ambulatory Surgical Center, violated her federal rights under § 1983. Plaintiff asserts that Strader "wrote [her] up on several occasions with inaccurate write ups, due to hearsay from other employees." (Compl. at p. 1.) Plaintiff also alleges that Strader and Mary Ann Petrosky ("Petrosky"), a new director employed with Defendant Davis Ambulatory Surgical Center, "set up" Plaintiff by allegedly accusing Plaintiff of breaking an instrument that Plaintiff asserts was broken on Plaintiff's day off from work. (Id.) Plaintiff asserts that this accusation was made approximately three days before she was fired. It appears that Plaintiff asserts that she worked for Defendants Duke Medical Center and Davis Ambulatory Center for a total

period of twenty years prior to her termination. Plaintiff asserts that Petrosky wrote on Plaintiff's termination papers that Plaintiff should not "be re-hired by Duke Hospital in the future." (Id. at p. 5.) Plaintiff asserts that she asked Petrosky to remove this statement from her termination papers but that Petrosky did not remove the statement. Additionally, Plaintiff alleges that she was never trained for her position while employed with Defendant Davis Ambulatory Surgical Center. It appears that Plaintiff alleges that she was "wrongfully terminated, discriminated against, and retaliated against by" Strader and Petrosky, and that the actions of Strader and Petrosky "had a direct and proximate result of [n]eg[ligence], causing [p]ersonal injury & [e]motional [d]istress." (Id.) Plaintiff requests damages for (1) pain and suffering, (2) "loss of enjoyment of life" and "inability to engage in usual activities," (3) emotional distress, (4) "mental anguish, invatied [sic] [her] reputation as a[n] employee," (5) "loss of wages and services," (6) "cost of medicines," (7) "cost of medicaide [sic], (8) "future damages and injunctive relief[,] [b]ack pay, promotions, [n]o merit raises for 3 years," and (9) "[r]easonable [a]ttorney [sic] [f]ees." (Compl. at p. 4.) Plaintiff alleges that she was injured in many ways, including (1) that her credit was affected; (2) that her name "was damaged at Duke," (3) that her health was affected and she "was put on medications," (4) that she suffered financially, (5) that her son suffered in college after Plaintiff informed him that she had been terminated, (6) that she was "degraded" and her family "was put in proverity [sic]," (7) that her retirement "was affected," (8) that she initially could not receive unemployment benefits "because she was lied on" by Strader and Petrosky but the Unemployment Security Commission of North Carolina subsequently determined that Plaintiff qualified for unemployment benefits

3

(see Response [Doc. #14], at 15-17). In light of the allegations discussed above, Plaintiff requests $1,500,000.00 in damages from Defendant Duke Medical Center and $1,200,000.00 in damages from Defendant Davis Ambulatory Surgical Center.

Defendants argue that Plaintiff, in her Complaint, is attempting to seek "a second 'bite at the apple' " in attempting to litigate her claims in this lawsuit. (Defs.' Mem. [Doc. #10], at 1.) Specifically, Defendants assert that Plaintiff's claims arising from Plaintiff's termination were the subject of binding arbitration. Defendants first allege that Plaintiff was hired in October 2002.[2] (Id. at 1-2 (citing Evans Decl. ¶ 1).) Defendants assert that during Plaintiff's employment, Plaintiff was "at all times covered by Duke policies, including the Duke University Dispute Resolution Process [("Resolution Process")]." (Id. at 2 (citing Evans Decl. ¶ 1).) Defendants assert that the Resolution Process includes a multi-step grievance process, up to and including, arbitration.[3] (Id. (citing Evans Decl., Attachment A).) Specifically, Defendants purport to cite to the portion of the copy of the Resolution Process that it argues states that "any dispute or controversy arising out of or related to my employment or termination with Duke University or Duke University Health System, including any claim based in whole or in part on federal, state, or local laws, whether statutory or common law, shall be subject to final and binding resolution through the applicable grievance or dispute resolution procedure." (Id.

---

[2] Plaintiff asserts that she worked for Duke Medical Center for twenty years. The Evans Declaration states that Plaintiff's most recent date of hire was in October 2002 although Plaintiff worked for Duke "for periods of time on two prior occasions." (Evans Decl. ¶ 1, n.1.)

[3] Defendants have attached a copy of the Resolution Process that appears to be downloaded from the Duke University Human Resources Website. Based on the date at the bottom of the copy of the Resolution Process provided by Defendants, the copy was downloaded on September 12, 2012.

at 3 (citing Evans Decl., Attachment A, p. 6).)  However, upon review of the copy of the Resolution Process, the Court has not found this exact language.  The closest language that the Court has found that is consistent with the language referenced by Defendants is:

> Any claim arising out of or relating to employment policies will be settled in accordance with this [Resolution Process] procedure.  The arbitration step of this procedure will be governed by the United States Arbitration Act.  Both the staff member and Duke are required to utilize this procedure to resolve disagreements falling within its scope.

(Evans Decl., Attachment A, p. 6.)[4]  Defendants also cite to the portion of the copy of the Resolution Process that states that the "arbitrator's decision 'will be final and binding between the parties as to all claims which were or could have been raised in connection with the dispute.'"  (Def.'s Mem. [Doc. #10], at 3 (citing Evans Decl., Attachment A, p. 10).)

Defendants also argue that Plaintiff agreed to submit her disputes through the Resolution Process.  Specifically, Defendants assert that in 2006, it reissued its Duke Staff Handbook ("the Handbook").  Defendants assert that Plaintiff received a copy of the Handbook and signed an Acknowledgment of Receipt form, stating that she received the Handbook.  (Evans Decl. ¶ 5, Attachment B, p. 12).)  Indeed, Defendants cite to Exhibit Attachment B, which contains a document titled "Acknowledgment of Receipt," which is a form acknowledging that the reader and signer received the Handbook.  (See id.)  The document appears to be initialed and signed by Plaintiff and her former supervisor Sherry Strader and the document is dated June 21, 2006. (Id.)  Additionally, the Acknowledgment of Receipt form contains a table with three headers titled (1) "Policy/Document", (2) "Initials", (3) "Date."  (Id.)  As Defendants assert, the

_____

[4] When referencing the exhibits and documents discussed herein, the Court will cite to the pagination created by the CM/ECF filing system.

Acknowledgment of Receipt Form shows Plaintiff's initials next to the phrase "Dispute Resolution Process," which falls under the "Policy/Document" header. (Id.) Defendants also cite to Exhibit Attachment C, (Evans Decl., Attachment C, p. 14), which contains a form signed by Plaintiff that requests that Plaintiff's termination dispute be submitted to the American Arbitration Association. Additionally, the form shows Plaintiff's choice of arbitrators to be David B. McCormick or Howard M. Cohen, with Mr. Cohen being the person who was ultimately the arbitrator over the claims that Plaintiff submitted to arbitration. (See Evans Decl., Attachment C, p. 14.)

Finally, Defendants cite to the Arbitration Award itself.[5] (Arbitration Award [Doc. #10-1].) Specifically, Defendants cite to the portion of the Arbitration Award where Arbitrator Cohen discussed that Plaintiff "contended that she was subjected to discrimination and retaliation as evidenced by a charge she filed with the Equal Employment Opportunity Commission" under the "Issues and Relief Sought" portion of the Award. (Arbitration Award at ¶ 8.) Additionally, per the Arbitration Award, Arbitrator Cohen stated that Plaintiff "also sought additional damages including compensatory and punitive damages and loss of future wages." (Id.) Ultimately, Arbitrator Cohen found "no evidence of discrimination or retaliation and no violation of the law in this regard," as Plaintiff only referenced her EEOC charge in arguing that Defendants discriminated against her. (Id. at ¶ 12.) Arbitrator Cohen concluded

---

[5] In Plaintiff's Response to Defendants' Motion to Confirm Arbitration Award [Doc. #14], Plaintiff also includes portions of the Arbitration Award. (Pl.'s Resp. [Doc. #14], at 11-13, 20-24.)

that "[Plaintiff's] termination from employment was justified and consistent with the Duke policies and guidelines. She was given a Written Warning and two Final Written Warnings . . . . She failed to comply with the terms of the Warnings and the issues cited in the Termination Notice are supported by the facts."[6] (Id. at ¶ 23.) Ultimately, Arbitrator Cohen's Award was in favor of the Respondent, Duke University, and Arbitrator Cohen denied Plaintiff's request for reinstatement and denied back pay or damages. Finally, Arbitrator Cohen noted that the Award was "in full settlement of all claims submitted to this Arbitration. All claims not expressly granted herein are hereby denied." (Arbitration Award, p. 6.)

The Court notes for the record that at the Motion hearing in this case, Plaintiff acknowledged that she agreed to submit her claims to arbitration, to the extent she participated in the arbitration proceeding at issue in this case. Plaintiff also acknowledged that she filed the instant lawsuit in response to Plaintiff discovering that the Arbitration Award had been entered and the Award was unfavorable to Plaintiff. Furthermore, the Court notes that at the Motion hearing, Plaintiff acknowledged that the same issues that she raised in the arbitration proceedings are the basis of the claims she has raised in the instant lawsuit. To the extent Plaintiff raises the claims that are currently in her Complaint, Plaintiff has only asserted, at the Motion hearing in

---

[6] Per the Arbitration Award, Plaintiff was issued her first written warning on August 19, 2011, which discussed three violations involving "Availability of Work," "Teamwork & Customer Service," and "Clinical Quality." (Arbitration Award at ¶ 16.) Plaintiff was then issued two final written warnings on August 31, 2011 and October 21, 2011. (See id. at ¶¶ 17-18.) Plaintiff was discharged on October 31, 2011 because she still failed to adequately perform her job. Specifically, the discharge termination notice referred to problems with the medical instrument trays including missing instruments, improper placement of instruments, and failure to disassemble instruments resulting in inadequate cleaning of the instruments. (See id. at ¶ 19.)

this case, that she disagreed with the Arbitration Award and that she felt that her claims should not be dismissed because she has no support after working for 20 years at Duke University.

## II. DISCUSSION

A. Whether the Court should Confirm the Arbitration Award issued in favor of Defendants.

In this case, Defendants request that the Court confirm the Arbitration Award issued in favor of Duke University by Arbitrator Cohen pursuant to 9 U.S.C. § 9 of the Federal Arbitration Act ("FAA"). At the Motion hearing, Plaintiff stated that the Court should not confirm the Arbitration Award because she disagreed with the Award and that she believed that the arbitrator colluded with Duke University at the arbitration proceeding. The Court will address these matters in turn.

Pursuant to 9 U.S.C. § 9, the statutory provision that governs the confirmation of arbitration awards:

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration, and shall specify the court, then at any time within one year after the award is made any party to the arbitration may apply to the court so specified for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title. If no court is specified in the agreement of the parties, then such application may be made to the United States court in and for the district within which such award was made.

9 U.S.C. § 9 (2012). "A confirmation proceeding under 9 U.S.C. § 9 is intended to be summary: confirmation can only be denied if an award has been corrected, vacated, or modified in accordance with the Federal Arbitration Act." Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir.

1986); <u>Vincent v. Am. Gen. Life & Acc. Ins. Co.</u>, No. 1:01CV518, 2004 WL 856330, at *3 (M.D.N.C. Apr. 16, 2004). Although intended to be a summary process, "[a] court has jurisdiction to confirm an award only if the parties have agreed that the award is final." <u>Rainwater v. Nat'l Home Ins. Co.</u>, 944 F.2d 190, 192 (4th Cir. 1991). As such, the Court will next address whether the Arbitration Award is binding and final on the parties for the purpose of confirming the Arbitration Award in this case.

    1. Whether the Arbitration Award is Binding on the Parties.

In determining whether Plaintiff agreed to submit her claims and disputes through the Duke University Resolution Process, which includes binding arbitration, Defendants point to an Acknowledgment of Receipt form, where Plaintiff acknowledged receiving a Handbook that included a summary of Duke's Resolution Process. Furthermore, Defendants have provided documentation in which Plaintiff submitted a form requesting arbitration in this case. (See Evans Decl., Attachment C, p. 14.) Plaintiff has not responded to Defendants' contention that she agreed to submit her termination claims to arbitration. Indeed, based upon Plaintiff's statements at the Motion hearing in this case, it would appear that Plaintiff acknowledged that she agreed to arbitrate her claims. To the extent Duke's Resolution Process gave Plaintiff an option of submitting her claims to final and binding arbitration, the Court notes that in this case, Plaintiff made the initial demand for arbitration challenging her termination and seeking reinstatement to her position with backpay. (See id.; Arbitration Award, p. 2.) Although Plaintiff, notably *pro se*, has not made it clear whether the instant lawsuit is an attempt to challenge any agreement to arbitrate in this case, the Court notes that "[t]o the extent that a party

is entitled to challenge the validity of an agreement to arbitrate, the time to raise that issue is before the matter goes to arbitration, not after." Owens-Williams v. Merrill Lynch, Pierce, Fenner, & Smith, Inc., 907 F. Supp. 134, 137 (1995), aff'd, 103 F.3d 119 (4th Cir. 1996). Thus, "[f]ailure to challenge arbitrability in timely fashion and participating in the arbitration proceedings, in other words, will result in waiver to the right to object." Id. (citing Int'l Longshoremen's Assoc., AFL-CIO v. West Gulf Maritime Assoc., 594 F. Supp. 670 (S.D.N.Y. 1984)). Also, an agreement to arbitrate need not be signed itself, and an agreement to arbitrate may be implied by a party's conduct. See Real Color Displays, Inc. v. Universal Applied Technologies Corp., 950 F. Supp. 714, 718 (E.D.N.C. 1997) (citing cases). In this case, Plaintiff submitted the demand for arbitration, which appears to be consistent with Duke's Resolution Process that allows employees to submit their claims to arbitration. Additionally, Plaintiff's demand for arbitration was also submitted to the American Arbitration Association ("AAA"), which is also consistent with the provisions of Duke's Resolution Process that "[t]he arbitration hearing will be guided by the National Rules for the Resolution of Employment Disputes—as developed by the [AAA]." (Evans Decl., Attachment A, p. 10).) The Fourth Circuit has noted that "reference to AAA rules and regulations is enough to make arbitration binding." Rainwater, 944 F.2d at 193. Thus, based on Plaintiff's demand for arbitration in this case and her request to use the AAA to govern the arbitration proceeding–both actions which appear to be consistent with Duke's Resolution Process–the Court finds that Plaintiff's termination claims were subject to binding arbitration in this case.[7]

---

[7] Although the parties did not discuss this issue in their briefing, the Court notes that to the extent Plaintiff submitted any Title VII or ADEA claims to arbitration, (see Arbitration Award

2. Whether the Court may Confirm the Arbitration Award because of the Statute of Limitations Issue.

Defendants have argued that the Court should confirm the Arbitration Award, even if such a confirmation would be outside of the one-year period set forth in 9 U.S.C. § 9. Under 9 U.S.C. § 9 of the FAA, a party to an arbitration may apply to a United States district court to confirm an arbitration award within one year after the award is made. In this case, the Arbitration Award was entered on July 18, 2012. However, as Defendants note, they did not seek confirmation of this award until November 19, 2013. Thus, at first, it appears that Defendants' Motion to Confirm Arbitration Award [Doc. #9] is untimely, as it was filed more than one year after the arbitrator entered his Arbitration Award. Nevertheless, Defendants also argue "that the one-year time period for confirmation of an arbitration award under 9 U.S.C. § 9 should not be given the effect of a statute of limitations that would bar confirmation. Defendants cite to Sverdrup Corp. v. WHC Cosntructors, Inc., 989 F.2d 148, 156 (4th Cir. 1993) in support of this proposition. Indeed in Sverdrup, the Fourth Circuit held that § 9 must be interpreted as a "permissive provision which does not bar the confirmation of an award beyond a one-year period." Id. Courts within the Fourth Circuit have followed this rule. 1199 SEIU United Healthcare Workers East v. Civista Med. Ctr., Inc., No. DKC 10-0479, 2011 WL 310486, at *4 (D. Md. Jan. 28, 2011) (finding that the Fourth Circuit has "not interpreted § 9 of the FAA

---

at ¶ 12 (referencing Plaintiff's EEOC charge (see Pl.'s Resp. [Doc. #14], at 14) and the discrimination claims alleged therein)), such claims are arbitrable. Carson v. Giant Food, Inc., 175 F.3d 325, 332 (4th Cir. 1999) (noting that Title VII and ADEA claims are arbitrable); see also 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 274, 129 S. Ct. 1456, 1474, 173 L. Ed. 2d 398 (2009) (holding that "a collective-bargaining agreement that clearly and unmistakably requires union members to arbitrate ADEA claims is enforceable as a matter of federal law.").

as creating a mandatory one-year statute of limitations period for actions seeking confirmation of arbitral awards" and finding <u>Sverdrup</u> to be controlling precedent within the Fourth Circuit); <u>United Gov't Sec. Officers of Am. v. Special Operations Grp., Inc.</u>, 436 F. Supp. 2d 790, 794-95 (E.D. Va. 2006) (finding that <u>Sverdrup</u> is the "controlling precedent in this circuit and district courts are not at liberty to reach a different result" even in light of the Supreme Court decision in <u>Cortez Byrd Chips, Inc. v. Bill Harbert Constr. Co.</u>, 529 U.S. 193, 120 S. Ct. 1331, 146 L. Ed. 2d 171 (2000)). <u>But see</u> <u>Photopaint Techs., LLC v. Smartlens Corp.</u>, 335 F.3d 152, 156-57 (2d Cir. 2003) (declining to follow the holding in <u>Sverdrup</u> in light of <u>Cortez</u>, and finding that the one-year period to petition for a confirmation of an arbitration award under § 9 imposes a statute of limitations on seeking such a confirmation); <u>Md. Transit Admin. v. Nat'l R.R. Passenger Corp.</u>, 372 F. Supp. 2d 478, 483-84 (D. Md. 2005) (calling into doubt the holding in <u>Sverdrup</u>, specifically, that the one-year time period in § 9 is not a statute of limitations period and declining to confirm arbitration award). Thus, under <u>Sverdrup</u>, which has not yet been reconsidered by the Fourth Circuit in light of the Supreme Court opinion in <u>Cortez</u>, the Court may properly find that it can confirm the Arbitration Award in this case, even when such a request to confirm the arbitration award has been submitted more than one year after the arbitrator entered the Award at issue in this case. For these reasons, the Court does not find that the one-year time period for confirmation of arbitration proceedings in federal court precludes the Court from confirming the arbitration Award at issue in this case.

3. Whether the Court can Vacate the Arbitration Award in this case.

At the Motion hearing in this case, Plaintiff stated that she believed that the arbitrator colluded with Duke University and that she informed the arbitration department that she did not agree with the Arbitration Award that was entered. Pursuant to 9 U.S.C. § 10, the Court may vacate an arbitration award in four circumstances: (1) "[w]here the award was procured by corruption, fraud, or undue means"; (2) "where there was evident partiality or corruption in the arbitrator[ ]"; (3) "where the arbitrator[ ] w[as] guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced"; or (4) "where the arbitrator[ ] exceeded [his or her] power[ ], or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Although Plaintiff now asserts that she believes that the arbitrator was biased in favor of Duke University in entering the Arbitration Award in this case, Plaintiff has not advanced any argument or evidence that she previously moved to vacate the Arbitration Award. Pursuant to 9 U.S.C. § 12, "[n]otice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered." The Fourth Circuit has held that "once the three-month period has expired, an attempt to vacate an arbitration award could not be made even in opposition to a later motion to confirm" unless a "tolling or due diligence exception operated to excuse [a] failure to make a timely motion." Taylor v. Nelson, 788 F.2d 220, 225 (4th Cir. 1986) holding reaffirmed in Choice Hotels Int'l, Inc. v. Shiv. Hospitality, L.L.C., 491 F.3d 171, 177-78 (4th Cir. 2007). As

the Arbitration Award in this case was issued in July 2012, the limitations period has run for Plaintiff to attempt to vacate the Award. Furthermore, Plaintiff has not argued that a tolling or due diligence exception applies in this case, and the Court does not find that such circumstances exist. As such, the Arbitration Award is not subject to vacation or reversal.

For the reasons stated above, the Court will confirm the Arbitration Award at issue in this case. The Court will do so because the Court finds (1) that Plaintiff agreed to participate in arbitration and the Arbitration Award was binding and final on the parties, (2) that the Court may confirm the Arbitration Award, even outside of the one-year period set forth in 9 U.S.C. § 9, and (3) that the Arbitration Award is not subject to vacation and reversal in this case.

B.      Whether the Arbitration Award has Res Judicata Effect on Plaintiff's Claims.

Defendants argue that Plaintiff's claims should be dismissed under the doctrine of res judicata. If the Court determines that Plaintiff's claims are barred by the doctrine of res judicata, the Court may properly dismiss Plaintiff's claims. See Andrews v. Daw, 201 F.3d 521, 524 (4th Cir. 2000). The party invoking res judicata claim preclusion " 'must establish three elements: (1) a final judgment on the merits in a prior suit, (2) an identity of the cause of action in both the earlier and the later suit, and (3) an identity of the parties or their privies in the two suits.' " Belmont Partners, LLC v. Mina Mar Grp., Inc., 741 F. Supp. 2d 743, 750 (W.D. Va. 2010) (quoting Meekins v. United Transp. Union, 946 F.2d 1054, 1057 (4th Cir. 1991)). In addressing the first element, it is not disputed that the Arbitration Award at issue was final and binding on the merits of Plaintiff's claims that were submitted to arbitration.[8] United Gov't Sec. Officers

---

[8] Furthermore, to the extent the Court has confirmed the Arbitration Award in this case, that would necessarily render the Arbitration Award, and the conclusion regarding the merits of any

of Am. v. Special Operations Grp., Inc., 436 F. Supp. 790, 793 (E.D. Va. 2006) ("A final and binding arbitration award normally has the same effects on the parties as a judgment of a court.") (citing Restatement (Second) of Judgments § 84 (1982)); Camp v. Kollen, 567 F. Supp. 2d 170, 174 n.6 (D.D.C. 2008) (stating that the plaintiff did not "contest the settled principle that '[t]he decisions of binding arbitration proceedings are final decisions on the merits for purposes of *res judicata*.' " (emphasis added in Camp) (quoting Century Int'l Arms, Ltd. v. Fed. State Unitary Enter. State Corp. 'Rosvoorouzheinie', 172 F. Supp. 2d 79, 95-96 (D.D.C. 2001))). But see Witcher v. Kroger Co., No. 8:06-1524-RBH, 2007 WL 2220404, at *7 (D.S.C. July 30, 2007) (declining to give preclusive effect to an arbitration award where there was no Fourth Circuit, or District Court of South Carolina, decision expressly permitting the court to do so).

As to the second element, Plaintiff stated at the Motion hearing that the claims underlying the arbitration proceedings are the same claims underlying her Complaint in this case, to the extent she challenges her termination.[9] "To determine the identity of the cause of action, the appropriate inquiry is whether the new claim arises out of the same transaction or series of transactions as the claim resolved by the prior judgment." Id. (citing Meekins, 946 F.2d at 1057). Because Plaintiff is challenging her termination in the current cause of action and the basis of the arbitration proceeding at issue in this case was whether Plaintiff was wrongfully terminated,

_____

such award, final. See 9 U.S.C. § 13 (noting that a judgment entered in an action for, *inter alia*, confirming an arbitration award, "shall be docketed as if it was rendered in an action" and that any such judgment shall have the "same force and effect, in all respects, as, and be subject to all the provisions of law relating to, a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered.").

[9] To the extent Plaintiff has filed a separate cause of action under § 1983, the Court will address that claim in Part II.C. below.

it would appear that her claims in this case arise out of the same transaction as the claims in the arbitration proceeding. Thus, particularly in light of Plaintiff's concession that the issues submitted to arbitration are the same issues that are the basis of Plaintiff's instant lawsuit, the Court finds that the claims Plaintiff submitted to arbitration and Plaintiff's current claims are identical.

Finally, as to the third element, the parties in this case appear to be the same or privies to the party in the arbitration proceeding. " '[T]he privity requirement assumes that the person in privity is so identified in interest with a party to former litigation that he represents *precisely the same legal right* in respect to the subject matter involved.' " Andrews v. Daw, 201 F.3d 521, 525 (4th Cir. 2000) (emphasis added in Andrews) (quoting Jones v. SEC, 115 F.3d 1173, 1180 (4th Cir. 1997) (internal quotation marks omitted), cert. denied, 523 U.S. 1072, 118 S. Ct. 1512, 140 L. Ed. 2d 666 (1998)). In this case, Plaintiff challenges the actions of Defendants Duke Medical Center and Davis Ambulatory Center, as her employer(s), for terminating her employment. However, Defendants have asserted that they are merely aspects and/or subsidiaries of Duke University, the party named in the arbitration proceeding. Plaintiff has not contested this argument by Defendants and throughout Plaintiff's pleading and the documents she has presented to the Court, Plaintiff has alternatively stated that she has been fired by Defendants, Duke University, or some version of an entity to which Plaintiff has referred to as "Duke." (See Compl. at p. 3 (stating that Plaintiff filed claims with Duke for her "inaccurate write ups"); id. at p. 5 (stating that Plaintiff was fired after working for Duke for 20 years and stating that her supervisor wrote on her termination documents that Plaintiff should not be rehired by Duke

Hospital); Pl.'s Resp. [Doc. #14], at 10 (requesting that Plaintiff be reinstated to her previous employment position or be transferred to another position "within the Duke Health System").) As such, based on Defendants' contention that they are subdivisions of Duke University and Duke University Health System, Inc. and because Plaintiff's own pleadings and the documents that she has presented to the Court have referred to her employer as various Duke University entities, the Court finds that there is no meaningful difference between Duke University or Duke University Health System, Inc. and Defendants. Thus, the Court finds that Duke University and/or Duke University Health System, Inc. and Defendants are the same entities, or at the very least, privies for the purposes of applying the doctrine of res judicata in this case. For the foregoing reasons, specifically that the Court has determined that the three res judicata elements have been satisfied as it relates to the arbitration proceeding at issue in this case, the Court finds that res judicata precludes Plaintiff from presenting her claims in the instant lawsuit.

Although the parties have not distinguished this point, but in an effort to be comprehensive, the Court notes that to the extent the Court must look to state law res judicata principles in resolving the instant matter, the Court notes that Plaintiff's claims would also be barred under North Carolina law. See Harding v. Ramsay, Scarlett & Co., Inc., 599 F. Supp. 180, 183 (D. Md. 1984) ("To decide whether res judicata or collateral estoppel principles will bar litigation in federal court, the court must look to the law of the state in which the judgment was entered." (citing Kremer v. Chemical Constr. Corp., 456 U.S. 461, 481-82, 102 S. Ct. 1883, 1897, 72 L. Ed. 2d 262 (1982)). To the extent it applies, under North Carolina law, "preclusive effect is not limited to court proceedings; it arises in the same manner from arbitration awards."

Whitlock v. Triangle Grading Contractors Development, Inc., 205 N.C. App. 444, 448, 696 S.E.2d 543, 546 (2010) (citing cases). Furthermore, "[o]ne who was not a party to a prior arbitration may use the arbitration award to bind an adverse party in a subsequent proceeding if, among other things, the adverse party or its privy was a party to the arbitration and 'enjoyed a full and fair opportunity to litigate th[e] issue in the earlier proceeding.' " Id. (quoting Whiteacre P'ship, 358 N.C. 1, 15, 591 S.E.2d 870, 880 (2004)). Because Plaintiff was "an active and controlling participant in the arbitration" proceeding at issue in this case, to the extent she participated in the arbitration, see id. at 444, 696 S.E.2d at 547, and because she seeks to assert claims for wrongful termination against Defendants in the instant suit, the Court notes that Defendants may use the Arbitration Award to bind Plaintiff in this case. As previously noted, the claims Plaintiff submitted to arbitration are similar to, if not the same as, the claims that form the basis of Plaintiff's current lawsuit. Therefore, under North Carolina law, Plaintiff had a full and fair opportunity to address the claims set forth in her Complaint at the arbitration hearing and, thus, Plaintiff is precluded from raising any such claim in the instant lawsuit.

As such, and for the reasons set forth herein, the Court will dismiss Plaintiff's claims to the extent they were the subject of the binding Arbitration Award at issue in this case. See Vincent, 2004 WL 856330, at *3 (confirming an arbitration award and dismissing the plaintiff's complaint "because the arbitration award disposed of all of [the p]laintiff's claims against [the defendant].").

C.    Whether Plaintiff has failed to state a claim under Section 1983.

Defendants also argue that to the extent Plaintiff has asserted a § 1983 claim against Defendants in her Complaint, and such a claim was not within the scope of the Arbitration Award in this case, it should be dismissed because Plaintiff has not alleged state action. Defendants correctly assert that "to state a claim under § 1983, [P]laintiff must aver that a person acting under color of state law deprived h[er] of a constitutional right or a right conferred by law of the United States." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 (4th Cir. 2009). Section 1983, "excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50, 119 S. Ct. 977, 143 L. Ed. 2d 130 (1999) (quotations and citation omitted). In this case, Plaintiff has asserted her § 1983 claim against Defendants Duke Medical Center and Davis Ambulatory Surgical Center, which are private entities under the control of Duke University and Duke University Health System, Inc. Although "state action may be found if . . . there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself," Brentwood Acad. V. Tennessee Secondary Sch., 531 U.S. 288, 295, 121 S. Ct. 924, 148 L. Ed. 2d 807 (2011), Plaintiff has failed to allege any state or government action in this case. As a result, Plaintiff has failed to allege "any close nexus between the State" and the conduct of Defendants, or their employees, in this case. As such Plaintiff's § 1983 claim fails.

III.     CONCLUSION

For the reasons stated herein, and stated in open Court on August 11, 2014, the Court will grant Defendants' Motion to Confirm Arbitration Award [Doc. #9] and confirm the July 18, 2012 Arbitration Award entered in favor of Duke University, and which denied Plaintiff's requested relief.  As the Court will confirm the Duke University Arbitration Award, the Court will dismiss Plaintiff's Complaint.  This is because Plaintiff acknowledged at the August 11 Motion hearing, and the Court has otherwise determined, that the claims underlying the arbitration proceeding are the same claims underlying Plaintiff's Complaint.  Furthermore, to the extent Plaintiff has brought a claim under § 1983, that was not the subject of the arbitration proceeding or the Arbitration Award, the Court will dismiss Plaintiff's § 1983 claim because Plaintiff has not alleged, or identified, any state action in this case.

IT IS THEREFORE ORDERED that Defendants' Motion to Confirm Arbitration Award [Doc. #9] is HEREBY GRANTED and the July 18, 2012 Arbitration Award entered in favor of Duke University, and which denied Plaintiff's requested relief, is HEREBY CONFIRMED.  IT IS FURTHER ORDERED, for the reasons set forth herein, that Defendants' Motion to Dismiss [Doc. #9] Plaintiff's Complaint is HEREBY GRANTED.

A Judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order.

This, the 9th day of September, 2014.

_____
United States District Judge